May it please the Court, Katherine Evans and Benjamin Casper, on behalf of Petitioner Ah May Ruth Lee. Petitioner respectfully requests that this Court vacate the BIA's denials of her motion to remand and her motion to reopen, claiming ineffective assistance of counsel, and remand the case to the BIA for further proceedings. Just to be clear at first, Petitioner does not challenge the IJ's adverse credibility finding. We are well aware of this Court's precedent in Singh and Clemente Heron, and under the totality of the circumstances standard established by the REAL ID Act, we agree that there is substantial evidence to support the IJ's adverse credibility finding on the record that she had before her at the time. We also want to make clear that Petitioner is not claiming that the BIA must reopen her case. We understand that this is a discretionary determination ultimately committed to the BIA, and even if it were to agree that Petitioner had met the requirements, it could ultimately deny that relief in the form of discretion. We also note that it may well be that the BIA could consider all of the evidence in support of the motion to remand and the motion to reopen in the context of her ineffective assistance of counsel claim, and determine that nonetheless, there is not a reasonable likelihood that the IJ will grant asylum. Petitioner is not conceding at this point that the BIA's conclusion to that end would be proper, but we want to make the point that the BIA never performed that analysis. The BIA never evaluated whether the IJ's credibility finding may well have been different if the new evidence provided in support of those motions had been presented before her with the effective assistance of counsel. In denying the motion to remand, the first decision by the BIA, the BIA dismissed Petitioner's Lozada claim for procedural defects. It then evaluated the evidence submitted in support of that claim in light of the existing adverse credibility assessment instead of evaluating whether the evidence may well have taken place. With respect to the procedural defect finding, we submit that this is error under the board's precedent in Lozada. Lozada requires three things. The one that seemed to be at issue here was whether or not the motion, the requirement from Lozada says the motion should reflect whether or not a grievance is filed with the relevant board authority, with the relevant professional authority. It doesn't specify what evidence is required in order to comply with that prong. And Petitioner's prior counsel was on no notice that anything more than the FedEx packing slip with a tracking number, a discussion that this grievance had in fact been filed, and a letter to prior trial counsel stating the date on which that grievance was going to be filed would be somehow insufficient to meet that prong. Judge Kaczynski and Correra-Rivera out of the Ninth Circuit was faced with a similar situation and vacated the board's denial of a motion to reopen based on the failure to comply with the Lozada requirements because the board was imposing an additional evidentiary requirement that it had not set out in Lozada and counsel was not on notice for. The board could certainly require specific evidence, but it needs to do so in advance and do so in a precedential manner. The board and the government rely on Hernandez-Moran in support of that procedural defectiveness ruling. Hernandez-Moran, I think it's important to note, involved a seriously defective filing. There was no affidavit that described the agreement between counsel and the attorney. There was no indication that the prior counsel had been given notice of that grievance. And then there was simply a letter that the motion stated had been filed and no evidence of the filing, unlike here where there is in fact the packing slip and the tracking number. The court stated that there was no certified mailing and no evidence that it had been received by the board. We did submit proof that the grievance had in fact been received in our motion to reopen, but the prior attorney who submitted the motion to remand didn't know that anything more would be required. I have a question. Your conclusion in your opening brief is very brief and asked the court to reverse and remand the BIA's decision. What's the rest of that? What do you want the BIA to do? And I'm not sure if you're looking at the more recent opening brief or the earlier one since we submitted two, but our final request in light of the full proceeding before the board is that the board has never actually evaluated her ineffective assistance of counsel claim. So it initially dismisses it for procedural defect. It then takes evidence in the motion to remand and says that it's either cumulative, it's not new, despite the fact that it wasn't previously available because of the ineffective assistance of counsel, as well as dismissing a number of other affidavits, which I can get to substantively. But procedurally, the problem is that the board has never actually evaluated whether or not the IJ may well have come to a different conclusion as to petitioner's credibility with the full range of evidence that was submitted in support of her motion to remand and her motion. Okay, so if you were writing this opinion, our opinion, and you prevail, tell me succinctly exactly what would we be telling the BIA to do? To consider her motion to remand and her motion to reopen and the claims for ineffective assistance of counsel, to determine by the board whether or not the board thinks that the evidence submitted in support of those motions prejudiced petitioner because the IJ may well have arrived at a different credibility determination had that evidence been before the IJ. The BIA never actually makes a determination on prejudice. I think it's similar to the court's decision in Clifton. But the BIA concluded that all of that would have made no difference. Well, I think the BIA does make a prejudice determination, but it makes that prejudice determination outside the confines of the ineffective assistance of counsel claim. So it makes it... Which order are you referring to now, the first order or the second order? The second one makes a more explicit determination of prejudice saying the Lozada claim fails because she wasn't prejudiced and then cites this court's case, I believe in Dessna. And Dessna is a case that involved an adverse credibility finding supported, affirmed on substantial evidence. So essentially the BIA is saying there, she doesn't prevail on her claim, which would be incredible. The problem with that is that it's essentially, the BIA's analysis is essentially saying she can't show that her trial counsel prejudiced her by failing to provide evidence that could have bolstered her testimony, knowing that there would be fundamental inconsistencies when he went before the immigration court because there was an adverse credibility finding. So it uses the subsequent adverse... Why do you think that's what they're saying? Why isn't it more natural to read it to mean that even if she'd presented this other evidence, there's no reason to believe the judge would have found her credible? Well, I guess I look to the citation to Dessna here to say that they're relying on her adverse credibility finding and that that was in fact supported by substantial evidence. The problem is that it doesn't actually look at any of the individual pieces of evidence that go to the core problems that the IJ found in her testimony, her Burmese nationality and the fundamental inconsistencies in the nature of her asylum claim. So the IJ repeats again and again that those changes in her claim were not brought to the court's attention until a month before the immigration hearing. Now, her counsel states in an affidavit that he's actually provided in support of this very case, which challenges his counsel, the effectiveness of his performance, that she had trouble disclosing this, that he believed her and therefore was aware that he was going to come in before the immigration court with a completely new asylum claim and one that she was going to have difficulty testifying to because of the delayed disclosure in telling him and anybody else about the severe sexual abuse that she experienced. And instead of actually looking at whether or not the absence of an explanation for why that delay occurred, an explanation for why she has trouble discussing that, something that actually goes, an independent evaluator from the Center for Victims of Torture who observed her physical responses to talking about her story, that evidence could have been made available. He was aware of the change in her claim for a year before that immigration court hearing and did not provide any evidence that would have supported and explained the change in the nature of her claim. There was also a witness who could have actually testified to her identity, the connections between their families, the location that they were born in in Burma, and the fact that she, that they both left for Thailand and then left for the United States. There was also an affidavit from her husband that was new that also discussed the connections that he had with her family in a Malaysian refugee camp for Burmese. This is all in the motion to reopen? The affidavit from the husband is in the motion to reopen because that did not exist at the time of the motion to remand. The board doesn't address that at all in the denial of the motion to reopen, so that's never discussed one way or the other. Does he have any personal knowledge of what happened to her in Burma? Or was he just reporting what he learned from her? He actually doesn't speak in his affidavit to what her experience was. He speaks to how he knows her. So that, he was introduced to her through her family members who had escaped Burma, were in a UNHCR refugee camp, and therefore supporting the notion that her family, her She has her cousin who's saying that cousin's mother, the younger brother of that cousin's mother is petitioner's father, that all of these people are Lisu and coming from Burma and escaped through various means. All right, I understand. Before you go on, I wanted to ask you one question back on the procedural defect. Can you explain again why you say it's impermissible for the board to I think it would be reasonable for the board to require proof of delivery if it wanted to, in a published manner or some way that put counsel on notice, change its Lozada requirements. Why do you say it would be a change in the requirements? Because the Lozada requires specifically an affidavit between the counsel, so it specifies the form of evidence that's required to discuss what the agreement was between the client and counsel. Oh, I'm talking about on the point about delivery. Yeah, sorry. And and then on the point of delivery, it simply says the motion should reflect whether or not a grievance is filed. It does not. But what why can't they say that unless you have proof of delivery, you haven't shown that it's been filed? I think they could in a future decision and add to Lozada requirements so that it were clear that just like you must have an affidavit to comply with Lozada, you also have to have proof of delivery. It would certainly be within the authority of the board to do that. The Lozada claim exists only at the discretion of the board, but it has not actually set out that requirement. And so that was what Judge Kaczynski pointed to, was that the text of their own standard doesn't specify what anything more than saying it should reflect in some way that a grievance was filed. What was the Ninth Circuit case about? What requirement there? It was exactly the same requirement. The BIA made a very similar decision saying there was not proof of delivery and that there was not acknowledgment from the bar that they had received the grievance. And Judge Kaczynski rejected both, saying that there was no notice that such specific forms of evidence would be required. It's not entirely clear what that complaint there. What's the basis for that? What principle of law? Is that some kind of due process argument or is that an administrative law requirement? I think it was an administrative law requirement, but looking at specifically the text in the BIA's decision in Lozada to say, well, the first two prongs state specifically what's required. The second, as I recall, Judge Kaczynski using the term oratory and does not actually specify the type of evidence that is required to comply with that. And so without the board stating more specifically what in fact was going to be required, you can't say that their motion was procedurally defective when it actually, you know, and I think there's more here than there was there, showing that this was in fact filed. So you think if they had published this opinion it would be okay or they have to give prospective notice? I think there would potentially be a retroactivity question about the effect on the particular petitioner in which that is filed. And that's, as I understand it, a case-by-case determination in terms of administrative retroactivity. But... What says it has to be published in order for the board to apply any requirement? Because the standard for abuse of discretion would be whether or not the board complied with its own established policy. And the only established policy that the board has set forth is matter of Lozada and the terms of matter of Lozada. Okay. Did you want to save any time for about... I would like to if I could. Thank you. Very good. Thank you. Mr. Blakely, we'll hear from you. Good morning, Your Honors. May it please the Court. John Blakely on behalf of the Respondent and Attorney General of the United States. Your Honors, the threshold disagreement with Ms. Lee and the government in this case is what the board actually accomplished with its two decisions and whether it has addressed the fundamental question of the alien supremophage eligibility for asylum. In both of its decisions here, the board has gone that far. The board did not rely on simply a finding that counsel was not ineffective. It didn't rely only on matter of Lozada. It didn't rely only on the evidence not being proven to be previously unavailable. Rather, the fundamental question in this case is did the alien establish supremophage eligibility for asylum? The board here considered the new evidence and it said even with the new evidence from the Center of Victims Against Torture, even with the new letters, okay, she failed to establish that supremophage eligibility. It doesn't say it in crystal clear language that would have obviously been preferable. But it's very clear from reading the decision in its entirety. Which order are you referring to now? Well, both, Your Honor. First, I'll start with the- Well, you just said the decision. You said it's clear from reading the decision. So which decision? Well, we'll start with the second decision on page three of the administrative record. What's the date of the- That's the June 24th decision, Your Honor. And on the first page of the decision, the board says that it has fully considered the decision, has reviewed it, and finds that it's substantially similar to the evidence we previously held insufficient to justify a remand or is otherwise insufficiently material to justify reopening. And then I think it's helpful there to reference the other decision, which is the January 14th, 2013 decision. It's on page 81 of the administrative record. And there, the board states, respondent has failed on appeal to establish supremophage eligibility for the relief and protection sought. So really what we're talking about here is the adverse credibility determination. This is a challenge to it, and we evaluate that in the totality of the circumstances, but we're going to look at it without some of the evidence that was considered by the immigration judge. We can say, okay, let's consider also that there's a statement from the Center for Victims Against Torture that may explain Ms. Lee's omission of the sexual assault. It's not that they automatically and convincingly explain that omission. It's just that it may affect it. We have to also remember here that petitioner provided three different reasons for why she omitted those events. So the board doesn't automatically give it full weight, but says, you know, we're going to consider that in the totality of the circumstances. And just as well, consider the letter from her now-husband, which says nothing more to the effect of, we both speak the Lee-Sue language, and she has told me that she was in Burma. And it kind of sounds from her stories like she may have been in Burma. So do you disagree with petitioner's counsel that the board failed to consider the ineffective assistance of counsel claim regarding the credibility? Or are you saying that you think they took into account all of the reasons for the credibility determination? I'm not sure I completely understand your question, but maybe my answer will. I think petitioner's counsel is saying they're still relying on the original credibility determination in deciding that she hasn't met her burden. Would you agree with that? How much do you think, I guess I'm a little unclear on how much you think that the board actually considered some of this new information in light of the ineffective assistance claim? I think that the board considered Ms. Lee's prima facie eligibility for asylum in light of all the new evidence. And the board did not give it the full weight that Ms. Lee may hope that she would give it. And I gave examples of that. That with her testimony, she provided three different reasons, other reasons, other than what was in the letter from the Center for Victims of Torture. Which part of the opinion do you cite for the idea that you think the board considered all of the evidence in the first opinion? This is on- January 14th. The January 14th? Yeah. That's on page 81 of the administrative record. Which page of the opinion? On page three. And which paragraph? The middle paragraph, third paragraph down, starting, furthermore. We have not considered the additional evidence, except as a possible basis for remand. The respondent has failed on appeal to establish prima facie eligibility for relief and protection sought. So you think that means they did consider the additional evidence as a possible basis for remand, but concluded that she had failed to establish prima facie eligibility? Exactly, Your Honor. It's important to recognize that in the first board decision, the board is addressing two different appeals of sort. The first is a direct appeal of the adverse credibility determination. And that's the one that they say, we have not considered the respondent's additional evidence for that purpose. They then go on and address the motion to remand, and the appropriate standard for the motion to remand to address is the prima facie eligibility for asylum. And so they said for that possible basis for remand, they have considered the new evidence. So how do you factor in the ruling about Lozada, the failure to meet the third step of that particular requirement? Well, that was a finding that the board reached. It's not important at all to this decision. This court need not reach it. The prima facie eligibility for asylum decides this case in its entirety. And did the board operate within its discretion? Yes, it operated within its discretion. But there's no reason for this court to even address that. Because the prima facie eligibility for asylum, which the board clearly addressed here, answers this entire case. If she fails to establish prima facie eligibility for asylum in face of this incredibly strong adverse credibility determination, then she loses on the motion to remand, and this court should deny. Humor me a bit. What's your position on that third step of Lozada standard? Do you think that the board erred, or do you think that that was a problem? I think the board operated within its discretion, Your Honor. Why? Because the board has established requirements with matter of Lozada, and it requires delivery. And the alien is required to establish they have met the requirements of Lozada. She presented her evidence in this case, and the board found that had it not established delivery. Does it require delivery? And you can prove me wrong. I thought it was a proof of showing that it had been filed. Is there a proof of delivery requirement? Filing is probably a better word, Your Honor. But as far as filing, the question is, what does filing mean? And who gets- Can it be filed without being delivered? That would be a question for the board, Your Honor, and I would suggest that- They're saying it can't be filed without being delivered. That's correct, Your Honor. With this case, that's what they have said. And so the question for this court is that abuse of discretion. I would argue that it's not abuse of discretion, but more importantly, I don't think this court needs to even reach that question. It is hyper-technical for the board to say that, but is it within the discretion of the board? This is a proper exercise of discretion. But I'd like to- Why do you say it's hyper-technical? I mean, anybody can send in a FedEx tracking sheet, but that doesn't show that it's been received. It's, certainly, Your Honor, and that's the reason the board reached the decision that it did. But what I mean by it's very technical, there's a very fine line between a FedEx receipt that shows that it's sent someplace and the fact that it got there. I think another thing that we could address here is that it's actually been- My point was the FedEx label doesn't even show it's been sent, does it? I mean, every FedEx label has a tracking number printed on it, as I understand it. So the sending in a label doesn't show it's been sent, it just shows that you have the label. Certainly, Your Honor, and there's no suggestion here, though, that there's fraud involved, or that it wasn't truly sent as it was. The question is, was it sufficient for the board? Here, it was not sufficient for the board. I think that another reason that the court need not even address this issue is in actuality, it was mooted out with the second motion to reopen. There's nothing in the second motion to reopen that addresses the matter of Lozada requirements. So in effect, all of the evidence that was submitted was considered, and the reason it was denied as a motion to reopen was because there's no prejudice shown. No prejudice shown in that they couldn't establish a prima facie eligibility for asylum. Now, as far as the actual finding of prima facie eligibility for asylum, I think it's important to look at the detailed immigration judge's decision we have here. It starts on page 262 of the record, and it goes on for about six, seven pages detailing the adverse credibility determination. And I think that IJ actually divides it up into about five or six, maybe seven different categories. But you could actually split those up even finer into 11 different discrepancies that the immigration judge relied on in reaching the adverse credibility determination. And of those, there are only two that are affected by the omissions. And on page 268 of the record, I think the immigration judge gives an excellent summary of her decision here, and says that there's only a small part of this is based on omissions. That the fundamental problem here is you don't even know if this individual, Miss Lee, is Thai, is she Burmese? Is she even Chinese, perhaps? That's not mentioned in here, but the question is, she has a Thai passport. She has a Burmese national registration card with flaws in it, because it's difficult to understand how she could have obtained that card once she had already exited Burma for good. And then she claims to have lived in a refugee camp on and off for an eight year period. And her mother and her children, her mother, her daughter, and her brothers and sisters continue to live there. But yet she's unable to obtain even one piece of evidence that she had ever been in that refugee camp. And so there's an essential question here that the IJ have, and it finishes up with that paragraph. At this point, the court is unsure where respondent is from or what happened to her. And so the question is, given the new evidence that is provided, first in the motion to remand and later in the motion to reopen, is there a reasonable likelihood that the result would be different? And there's nine different reasons in the immigration judge's decision that this wouldn't be any different. And with the failure to establish Primfash eligibly to sign them, I would ask this court to find that the board did not abuse its discretion in denying either the motion to reopen or the motion to remand. And- What's your understanding of the particular group that the petitioner contends that she belongs to and that gave rise to this, to her fear of abuse or torture? Is it the Lisu ethnicity, is that your understanding of the claim here? Your Honor, the board never reached that, and so it wouldn't be appropriate for the court here to reach that. It wasn't- What's your under, you've seen the- Question is, what did she claim was the group? Yeah, what's your understanding of the claim here? I was never clear on what that claim was, Your Honor, and it was never addressed by either the IJ or the board. It was just sort of assumed that there was something established there. And it was decided on other grounds, and so again, it wouldn't be appropriate for the court to reach that issue. If the court believes that it's important to reach that issue, then it should be sent back to the board to address in the first instance, Your Honor. I was just curious if the government has an opinion as to the end of the day, whether the petitioner would be able to establish an essential element of this kind of a claim. I think there could be problems with it, Your Honor, to the extent that many of the problems she describes growing up through childhood, I'm not referring to any specific instance here, but growing up through childhood are circumstances of general unrest and civil war. And to the extent that that's the only basis for what happened to her, then it would be insufficient. But again, I'll emphasize that that was not reached below. Okay, thank you, Mr. Blakely. Ms. Evans, I think you had about 41 seconds left, so. So I think just- Just before you start, am I correct that it's the Lisu ethnicity that's the basis of the claim? Yeah, I was just going to address that question. I think the IJ says on petitioner's addendum page 17 in the first brief, it's towards the end with the credibility finding, that the claim that's crucial was only recently made. And the claim that was crucial is that she was gang raped by Burmese military, members of that government, because she was a member of the Lisu community believed to support the freedom fighters. And that's essentially all the elements for asylum. The problem with the prima facie case that he points to is that that's wrapped up in the adverse credibility finding. And I think going back to Judge Shepard, some of your decisions, and Judge Colleton, your opinion in Ochoa, the Clifton decision, the Hibachi decision, the Ochoa decision show what's wrong here. That the evidence has never actually been taken into account in full, especially including the husband's affidavit, which talks about her family ties, in the context of what effect her counsel's performance had on creating that adverse credibility determination in the first place, and I see I'm done, thank you. Yes, well thank you very much for your argument. The case is submitted and we will file an opinion in due course. Thank you very much.